IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LATINA MONIQUE TATE, | § | |
| Plaintiff, | § | |
| v. | § | No. 3:21-CV-0895-B-BH |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**</u>

Before the Court is *Defendants Rafael Fontalvo, Maria Sandra Rodriguez, and Carma Hoskins's Motion to Dismiss Plaintiff Latina M. Tate's Original Complaint and Brief in Support*, filed May 18, 2021 (doc. 9), and *Defendants Dallas Independent School District's Motion to Dismiss Plaintiff Latina M. Tate's Original Complaint and Brief in Support*, filed May 18, 2021, (doc. 10). Based on relevant filings and applicable law, both motions should be **GRANTED in part** and **DENIED in part**. The plaintiff's responses to the motions are liberally construed as a motion for leave to amend her complaint to add a new claim and **GRANTED**.

## I.    BACKGROUND

Latina Monique Tate (Plaintiff) sues Dallas Independent School District (DISD) and three of its employees, Maria Sandra Rodriguez, DISD Background Specialist (Background Specialist), Rafael Fontalvo, a Department Manager in DISD's Human Capital Management Department (Department Manager), and Carma Hoskins, Equal Employment Opportunity Manager (EEO Manager) (collectively Employees), under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* (Title VII), and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

(FCRA), for compensatory, punitive, and injunctive relief. (*See* docs. 3 at 1-3, 6.)[2]

Plaintiff obtained a Texas teacher certification in special education EC-12 through the iTeach Texas Program. (*See id.* at 4.) On April 8, 2019, she attended a DISD job fair for alternative certification candidates. (*See id.* at 33.) The next day, DISD offered her an "early contract via email that guaranteed [her] a teaching position for the 2019-2020 academic year," "pending the completion of all the requirements as stated in the document," including new hire forms, an approved background, and valid certification. (*See id.* at 4, 10.) After an interview, on May 6, 2019, she was offered a teaching position at a local high school. (*See id.* at 4, 10.)

On May 23, 2019, Background Specialist emailed Plaintiff and requested information about three arrests that appeared on a background report, including a description of the arrests, an explanation of why they were omitted from the application, and submission of related court documents, within 48 hours. (*See* doc. 3 at 17-18.) That day and the next, Plaintiff responded to Background Specialist by telephone and email, explaining that the arrests were traffic-related and had not resulted in convictions, which is why she had omitted them from her application. (*See id.* at 18-19.) She also explained that she would be traveling to Illinois, where the arrests took place, to obtain the court documents, but it would take her "a week to 10 days," given the time that had passed since the arrests. (*See id.* at 19.) Background Specialist replied that she had "[n]otated the time frame for the court documents." (*See id.*)

On June 5, 2019, Background Specialist sent Plaintiff an email stating, "The review of your background has been completed and you are ineligible for employment with [DISD] at this time

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

in accordance with [DISD] District Policy DBAA (Local)." (*See id.* at 20.) The next day, Plaintiff submitted her court documents "in the timeframe originally stated," which she later explained was "10 business days." (*See id.* at 22, 32.) On June 7, 2019, she asked Department Manager for information about the "consumer reporting agency" that provided her background information; he said he would get back with her by telephone the next day but never did. (*See id.* at 5.)

On September 23, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging she had been "discriminated against because of [her] Race-Black/African American, in violation of Title VII," and "profiled due to an arrest record that had nothing to do with [her] teaching ability or credentials." (*See id.* at 5-6, 24-25). DISD's response, which was signed by EEO Manager, denied Plaintiff's allegations and stated that her offer had been rescinded because she had not taken and passed the Core Subjects certification exam, which was a requirement for the position, had failed to provide requested documents, and had failed to communicate timely with the Background Department. (*See id.* at 28-31.) The EEOC sent Plaintiff a dismissal and right to sue letter on January 21, 2021, which she received "on or about" February 1st or 2nd, 2021. (*See id.* at 5-6, 35.)

Plaintiff filed this lawsuit against the three DISD employees (Employees) and DISD (collectively Defendants) on April 19, 2021, alleging that they had discriminated against her based on race in violation of Title VII, and that they obtained and used her background information in violation of the FCRA. (*See id.* at 1, 3, 5-6, 35.) She filed proof of service showing that an individual at the same address as her mailed each defendant a copy of the summons by certified mail, return receipt requested, at "9400 North Central Expwy, Dallas, Texas 75231." (*See* docs. 8, 8-1, 8-2, 8-3.)

3

On May 18, 2021, Defendants moved to dismiss the complaint for insufficient service and failure to state a claim upon which relief may be granted. (*See* docs. 9, 10.) Plaintiff responded to both motions and asserted for the first time a new discrimination claim based on a disparate impact theory. (*See* docs. 13 at 1; 14 at 1.)

## II.    SERVICE OF PROCESS

Defendants move to dismiss the claims against them under Rule 12(b)(5) for lack of proper service. (*See* docs. 9 at 14; 10 at 15.)

Rule 12(b)(5) permits a party to challenge the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint. *See* Fed. R. Civ. P. 12(b)(5); *Gartin v. Par Pharm. Companies, Inc.*, 289 F. App'x 688, 692 n. 3 (5th Cir. 2008) (citation omitted).[3]  Rule 4(c) places the burden on the plaintiff to ensure that defendants are properly served with summons and a copy of the complaint. Fed. R. Civ. P. 4(c)(1); *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).[4]  For service to be effective, a plaintiff must comply with the requirements of Rule 4. Fed. R. Civ. P. 4; *Bowling v. Childress-Herres*, No. 4:18-CV-610-ALM-CAN, 2019 WL 4463450, at *6 (E.D. Tex. Aug. 7, 2019), *report and recommendation adopted*, 2019 WL 4451122 (E.D. Tex. Sept. 17, 2019). This includes the requirement in Rule 4(m) for service within 90 days of the filing of the lawsuit, although the time for service may be extended upon a showing of good cause. Fed. R. Civ. P. 4(m); *Bowling*, 2019 WL 4463450, at *6. "A

---

[3]  "In the absence of service of process (or waiver of service by the defendant)," courts ordinarily may not exercise personal jurisdiction over defendants. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).

[4]  The filing of proof of service is required unless service was waived. *See* Fed. R. Civ. P. 4(l)(1). Proof consists of "the server's affidavit" when service is not effected by a United States Marshal or Deputy Marshal. *Id.* A return of service is *prima facie* evidence of the manner of service. *Nabulsi v. Nahyan*, No. H-06-2683, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009), *aff'd* 383 F. App'x. 380 (5th Cir. 2010) (*per curiam*).

litigant's *pro se* status neither excuses his failure to effect service nor excuses him for lack of knowledge of the Rules of Civil Procedure." *Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013) (citations omitted); *see also Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) (same). District courts have broad discretion in deciding whether to dismiss an action for ineffective service of process." *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994) (citing *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986)).

In considering a motion to dismiss under Rule 12(b)(5), a court may properly look beyond the pleadings to determine whether service was sufficient. *See*, *e.g.*, *Williams v. Kroger Texas, L.P.*, No. 3:16-CV-1631-L, 2016 WL 5870976, at *1 (N.D. Tex. Oct. 6, 2016) (dismissing a case under Rule 12(b)(5) "[a]fter considering the Motion, pleadings, record in this case, and applicable law"); *see also Trombetta v. Novocin*, No. 18-CV-993 (RA), 2020 WL 7053301, at *2 (S.D.N.Y. Nov. 24, 2020) (citation omitted) (holding a court may look at "affidavits and supporting materials" in considering a motion to dismiss under Rule 12(b)(5)); *Cutler Assocs., Inc. v. Palace Constr., LLC*, 132 F. Supp. 3d 191, 194 (D. Mass. 2015) (citation omitted) ("[T]he Court is permitted to look beyond the pleadings and may consider affidavits and other documents to determine whether process was properly served."). Here, Plaintiff filed proof of service showing that an individual at her same address mailed each defendant a copy of the summons by certified mail, return receipt requested. (*See* docs. 8, 8-1, 8-2, 8-3.) Employees also attached copies of two of the certified mail envelopes bearing Plaintiff's name and return address to their motion to dismiss. (*See* doc. 9 at 30-31.) These documents may be properly considered.

## A. **Employees**

Rule 4(e) provides that an individual may be served by:

(1)    following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2)    doing any of the following:

    (A)    delivering a copy of the summons and of the complaint to the individual personally;

    (B)    leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    (C)    delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Under Texas law, any person authorized by Texas Rule of Civil Procedure 103[5] may serve process by "(1) delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition; or (2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition." Tex. R. Civ. P. 106(a)(2). The return receipt must be signed by the addressee to be effective. Tex. R. Civ. P. 107(c); *Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010) (*per curiam*).

According to Plaintiff's proof of service, the certified mail return receipts were signed by Martha Perez, not any of the Employees. (*See* docs. 8, 8-1, 8-2, 8-3.) Plaintiff has not shown that Martha Perez is an authorized agent for service of process for each of the Employees, so her attempted service on them is insufficient. *See* Fed. R. Civ. P. 4(e)(1); *Ayika*, 378 F. App'x at 434 (finding that the plaintiff's "attempted service was insufficient under Rule 4" because the defendants' "signatures [did] not appear on the return receipts" as required by Tex. R. Civ. P. 107).

**B.  DISD**

Rule 4(j)(2) requires that service on a "state-created governmental organization" such as

---

[5] Rule 103 provides that process "may be served anywhere by (1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, or (3) any person certified under order of the Supreme Court." Tex. R. Civ. P. 103.

an independent school district "must be effectuated by 'delivering a copy of the summons and of the complaint to its chief executive officer' or by 'serving a copy of each in the manner prescribed by that state's law for serving a summons or like process upon such a defendant.'" Fed. R. Civ. P. 4(j)(2). Under Texas law, citation in a suit against a school district "may be served on the president of the school board or on the superintendent." Tex. Civ. Prac. & Rem. Code § 17.024(c).

The return receipt for the certified mailing to DISD was also signed by Martha Perez. (*See* doc. 8.) Plaintiff has not shown that she is DISD's board president or superintendent. (*See* doc. 10 at 17.) Her attempted service on DISD is therefore also insufficient. *See* Fed. R. Civ. P. 4(j)(2); Tex. Civ. Prac. & Rem. Code § 17.024(c); *see also Hernandez v. Duncanville Sch. Dist.*, No. 3:04-CV-255-AH, 2004 WL 1882640, at *3 (N.D. Tex. Aug. 20, 2004) (finding that the plaintiff's service was insufficient because neither the school district's superintendent nor its board president were served).

## C.   Additional Opportunity to Serve

"When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990) (per curiam) (citations omitted). To show good cause, a plaintiff has the burden of demonstrating "at least as much as would be required to show excusable neglect[.]" *Id.* (quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985)). A plaintiff also "may be required to show that (1) the party to be served personally received actual notice of the lawsuit; (2) the defendant would not suffer any prejudice by the court extending the [service] deadline; and (3) the plaintiff would be severely prejudiced if his complaint were dismissed." *Hickman v. U.G. Lively*, 897 F. Supp. 955, 959-60 (S.D. Tex. 1995) (citing

7

*Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)).

Even if a plaintiff fails to show good cause, a court has the discretionary power to extend the time for service instead of dismissing the case without prejudice. *See Millan v. USAA Gen. Indem. Co.,* 546 F.3d 321, 325 (5th Cir. 2008) (citing *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996)). "A discretionary extension may be warranted, 'for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.'" *Id.* (quoting Fed. R. Civ. P. 4(m) advisory committee's note (1993)). The dismissal for insufficient service of an action that would be time-barred if refiled is reviewed under the same heightened standard for a dismissal with prejudice, i.e., "where 'a clear record of delay or contumacious conduct by the plaintiff exists' and a 'lesser sanction would not better serve the interests of justice.'" *Id.* at 326 (quoting *Gray v. Fid. Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir. 1981)). One court has noted that a dismissal for ineffective service is rare and normally occurs only after a plaintiff has received multiple opportunities to perfect service. *Coleman v. Carrington Mortgage Services, LLC*, No. 4:19-CV-00231-ALM-CAN, 2021 WL 1725523, at *3 (E.D. Tex. Apr. 12, 2021), *adopted by* 2021 WL 1721706 (E.D. Tex. Apr. 30, 2021) (citations omitted).

Plaintiff's responses to the motions to dismiss merely contend that she has met all requirements for service of process, so she has not shown good cause for her failure to properly serve Defendants. Nevertheless, as in *Millan*, she would be barred by the applicable limitations period from refiling her employment discrimination claims. Defendants do not allege a clear record of delay or contumacious conduct, or that a lesser sanction would not better serve the interests of justice. Plaintiff has not previously been given an opportunity to perfect service on Defendants. Moreover, Defendants also seek dismissal under Rule 12(b)(6). Exercise of the

discretion to extend the time for service of any claims that survive the Rule 12(b)(6) motions is warranted, and the Rule 12(b)(5) motions should be denied.

### III.    FAILURE TO STATE A CLAIM

Defendants also move to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* docs. 9 at 7; 10 at 18.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry*, 954 F.2d at 281. The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly* at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 683.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Similarly, documents "attache[d] to a motion to dismiss are considered part of the

pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff attached to her complaint copies of correspondence, her EEOC charge, DISD's position statement, her response to the EEOC investigator, and the EEOC's dismissal and notice of rights. (*See* doc. 3 at 8-37.) These attached documents are considered part of the pleadings. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

DISD attached to its motion to dismiss a copy of Plaintiff's official teacher certification record. (*See* doc. 10 at 34.) Both motions to dismiss also referenced the "Dallas ISD Board policy DBAA (Local)" (DISD Policy), which is accessible through the Texas Association of School Boards website. (*See* docs. 9 at 11 n.1; 10 at 12 n.1.) Although the record and policy were not attached to Plaintiff's complaint, they may be considered part of the pleadings because they are referred to in her complaint and central to her claims, and the policy appears to be a matter of public record. *See Collins*, 224 F.3d at 498-99; *Norris*, 500 F.3d at 461 n.9. It is unnecessary to convert the motion to dismiss into a motion for summary judgment.

## A.  Title VII

Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

### 1. *Claims Against Employees*

Employees move to dismiss Plaintiff's Title VII claims against them because they are not her employer. (*See* doc. 9 at 16.)

Title VII imposes liability upon employers who violate its provisions. *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Congress defined the term "employer" in Title VII to include "any agent" of an employer to incorporate *respondeat superior* liability. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (citing 42 U.S.C. § 2000e(b)). Title VII actions may therefore be brought against the "employer" or a supervisor or agent of the employer in his official capacity. *Lewis v. Hardy*, 248 F. App'x. 589, 592-93 (5th Cir. 2007) (per curiam) (citing *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998)); *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2000 WL 34226872, at *2 (N.D. Tex. July 14, 2000) (Title VII liability extends only to employers and defendants in their official capacities). A Title VII suit against an agent of an employer in an official capacity is actually a suit against the employer. *Indest*, 164 F.3d at 262. Because the employer ultimately bears responsibility for the liability of an agent through Title VII's incorporation of *respondeat superior* liability, an action against both the employer and the agent would be redundant in that the employer could be held liable twice for the same act. *Id*. A plaintiff may therefore not maintain a Title VII suit against both an employer and its agent. *Id*. Regardless of whether a plaintiff sues an agent in an official or individual capacity, Title VII does

not provide for individual liability against the agent. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002).[6]

Here, Plaintiff asserts the same Title VII claims against Employees that she asserts against DISD based on the same actions. (*See* doc. 3 at 3-6.)   Based on the allegations in the complaint, Employees were acting as agents of DISD at the time of those actions, so any Title VII claims against them are not cognizable under Fifth Circuit law, regardless of the capacity in which she sues them. *See Smith*, 298 F.3d at 448; *see also Barrow*, 2000 WL 34226872, at *2. All of her Title VII claims against Employees should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### 2. Failure to Hire Claim

DISD moves to dismiss Plaintiff's failure-to-hire claim for failure to plead a prima facie case. (*See* doc. 10 at 19.)

Generally, to establish a prima facie case of failure to hire under Title VII, a plaintiff must show that she (1) belongs to a protected group, (2) applied for an open position, (3) was qualified for the position, (4) was not hired, and (5) the position either remained open or someone outside the protected class was selected to fill it. *See Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1135 (5th Cir. 1983) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (per curiam). While a plaintiff's

---

[6] Courts look to the course of proceedings to determine the capacity in which a defendant is sued. *See United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2004) (noting that while it was unclear whether the complaint named employees in their official or personal capacities, the course of proceedings demonstrated that they were only named in their official capacities, and plaintiff had not challenged the assertion that the employees should be dismissed because they were only named in their official capacities); *Harmon v. Dallas Cty.*, 294 F. Supp. 3d 548, 569 n.6 (N.D. Tex. 2018) (same); *but see Douglas v. Gusman*, 567 F. Supp. 2d 877, 888-89 (E.D. La. 2008) (when a *pro se* plaintiff does not specify whether a defendant in named in his official or individual capacity, it is generally presumed by operation of law that the defendant is named in his official capacity) (citations omitted).

complaint need not plead a prima facie case of discrimination in the motion to dismiss context, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the prima facie elements are not entirely irrelevant, and no plaintiff is exempt from her obligation to allege sufficient facts to state all the elements of her claim, *Puente v. Ridge*, 324 F. App'x 423, 427-28 (5th Cir. 2009).

Although a court must view a plaintiff's well-pleaded complaint in the light most favorable to her when considering a motion to dismiss, it is not sufficient to merely assert a legal conclusion that the plaintiff was discriminated against because of a protected characteristic. *See Landavazo v. Toro Co.*, 301 F. App'x 333, 336 (5th Cir. 2008) (per curiam). Alleged facts must be sufficient to at least create an inference that the plaintiff was discriminated against because of a protected characteristic. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *see Landavazo*, 301 F. App'x at 336 (noting that "[plaintiff's] statement that [t]he real reasons [he] was discriminated ... against in the terms, conditions and privileges of his employment [was] because of his race, color, national origin and or ethnicity ... is merely a legal conclusion") (citations omitted); *see also Puente*, 324 F. App'x at 428. When a plaintiff sets out facts that do "not seem to have anything to do with" discrimination based on a protected characteristic, the claim is properly dismissed under Rule 12(b)(6). *See Raj*, 714 F.3d at 331.

Here, Plaintiff contends that DISD violated Title VII when it "fail[ed] to hire an African-American based singly on an arrest record." (doc. 3 at 3.)  She alleges that she was certified in special education, and that DISD initially offered her a "Special Education EC-12" teaching position at a high school, but it ultimately failed to hire her after a background check revealed three "traffic arrests" between 1992 and 2015. (*See id.* at 3-4.) While Plaintiff generally alleges that Defendants "discriminated against [her] based on [her] race," she does not allege any facts that

14

link DISD's hiring decision with her race. *See Fuller v. Donahoe*, No. 3:14-CV-576-P, 2015 WL 12533009, at *2 (N.D. Tex. Mar. 30, 2015) (dismissing discrimination claim when it "contain[ed] no indication that [plaintiff's] race was considered"). She also does not allege facts showing that she met all requirements to be qualified for the position, that the teaching position remained open, or that DISD hired a person outside her protected class for that position. *See Corrica v. Am. Airlines*, No. 3:20-CV-0679-B, 2020 WL 7711830, at *6 (N.D. Tex. Dec. 28, 2020) (dismissing failure to hire claim where there were no allegations that the position either remained open or was filled by a person outside the protected class). Because Plaintiff failed to plead facts to support all elements of a prima facie case, and her allegations are not sufficient to create an inference that she was discriminated against based on race, her failure to hire claim should be dismissed under Rule 12(b)(6) for failure to state a claim. *See Durham v. Ascension Parish School Bd.*, 624 F. App'x. 237, 237-38 (5th Cir. 2015) (per curiam) (affirming dismissal by concluding that the plaintiff had failed to make factual allegations sufficient to establish a prima facie discrimination case).

### 3. *Disparate Impact Claim*

Disparate impact discrimination addresses employment practices or policies that are facially neutral in their treatment of a protected group but have a disproportionately adverse impact on members of that group. *See Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275-76 (5th Cir. 2008).

### a. **Administrative Exhaustion**[7]

---

[7] Because Plaintiff is proceeding *pro se*, her pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). As a general rule, claims and allegations that are not raised in the complaint, but rather raised for the first time in a response to a dispositive motion are not properly before the court. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *see also Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005)

DISD argues that Plaintiff's disparate impact claim should be dismissed because she has failed to exhaust her administrative remedies. (doc. 16 at 8-9.)

Before filing a disparate impact claim under Title VII, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. *Pacheco*, 448 F.3d at 787-88 n.6. The scope of a subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *See Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir. 1984). Courts are to "interpret[] what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco*, 448 F.3d at 789 (quoting *Sanchez*, 431 F.2d at 466). A court should "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

Here, Plaintiff's EEOC charge alleges race discrimination, and states that after Plaintiff was offered a position at a high school, DISD reviewed her background and determined that she

---

(explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend); *see also Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (*per curiam*) (holding that "[t]he district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"). "This is particularly true where ... the litigant is *pro se* and has not yet made any amendments to her complaint." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010). Plaintiff's allegations and "disparate impact" claim in her response to DISD's motion to dismiss are construed as a motion to amend, which is granted.

was "ineligible for employment with Dallas ISD at this time in accordance with Dallas ISD District Policy DBAA (Local)." (*See* doc. 3 at 24-25.) It alleges that she was "discriminated against because of [her] Race-Black/African American" in violation of Title VII because she "was profiled due to an arrest record that had nothing to do with [her] teaching ability or credentials." (*See id.*) The charge identifies a facially neutral employment policy, as well as an employment decision that adversely impacted Plaintiff as member of a protected group. *See Pacheco*, 448 F.3d at 792 (explaining that a facially neutral employment policy is considered a "cornerstone of any EEO[C] disparate-impact investigation"). Reading the charge broadly, an investigation reasonably expected to grow out of Plaintiff's charge would encompass a disparate impact claim. *See McClain*, 519 F.3d at 275 (finding allegation of a discriminatory, but neutral, company policy of subjective promotion decisions in the EEOC charge was sufficient to exhaust a disparate impact claim). Because Plaintiff has exhausted her disparate impact claim, DISD's motion to dismiss that claim on exhaustion grounds should be denied.

### b.    Failure to State a Claim

Defendant also argues that Plaintiff failed "to state a plausible Title VII disparate impact discrimination claim." (doc. 16 at 6-8.)

"To establish a prima facie case of disparate impact, a plaintiff must both identify the employment practice that has the allegedly disproportionate impact and establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002). As noted, although a plaintiff need not plead a prima facie case at this stage of the proceedings, she must still allege facts to show "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse

effect on a protected class" in order to state a disparate impact claim. *Finch v. Tex. Health and Human Servs. Comm'n*, No. H-13-3716, 2015 WL 5674834, at *2 (S.D. Tex. Sept. 25, 2015) (quoting *Pacheco*, 448 F.3d at 791). A plaintiff "cannot merely allege a disparate impact, or point to a generalized policy that leads to such an impact." *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 257 (N.D. Tex. 2011) (citing *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008)). Rather, the plaintiff is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 656 (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994 (1988)).

Here, Plaintiff alleges that DISD's decision to "deny[] employment to an African-American based solely on an arrest record" is "not about a single teaching opportunity within the Dallas Independent School District," but "also indicate[s] disparate impact discrimination." (doc. 13 at 2.) She generally contends that potential employers that refuse "to hire African-Americans based solely on an arrest record" "participate in disparate impact discrimination." (*Id.*) As discussed, Plaintiff's EEOC charge mentioned that she was found to be "ineligible for employment" with DISD "in accordance with Dallas ISD District Policy DBAA (Local)." (doc. 3 at 24.) While Plaintiff appears to identify a neutral policy or practice of DISD, she does not allege any facts to establish that such policy or practice had a "disproportionately adverse effect on a protected class." *See Pacheco*, 448 F.3d at 791. Notably, Plaintiff does not allege that other African-Americans had been denied employment by DISD because of their arrest records. Her general and conclusory allegations are insufficient to state a claim for racial discrimination based on disparate impact. *See Twombly*, 550 U.S. at 570; *see, e.g., Bannister v. Dal-Tile Intern., Inc.*,

18

No. 3:02-CV-2498, 2003 WL 21145739, at *3 (N.D. Tex. May 14, 2003) (finding that the plaintiff failed to state a claim for disparate impact discrimination). Accordingly, Plaintiff's disparate impact claim should also be dismissed for failure to state a claim.

## B. **FCRA**

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA "governs the reporting of consumer credit information and outlines the exclusive permissible uses of credit reports." *See Wilting v. Progressive County Mut. Ins. Co.*, 227 F.3d 474, 475 (5th Cir. 2000) (per curiam). Among other things, the FCRA prohibits any person from using or obtaining a consumer report for anything other than a permissible purpose. *See* 15 U.S.C. § 1681b(f). One of those permissible purposes is for employment purposes. *See* 15 U.S.C. § 1681b(a)(3)(B). Generally, the FCRA provides a private right of action against any person who negligently or willfully fails to comply with the statute. *See id.* §§ 1681n, 1681o. "To assert a violation of the FCRA, a plaintiff must allege (1) that there was a 'consumer report,' (2) that defendant used or obtained the report (3) without a permissible purpose, and (4) that defendant acted negligently or willfully." *See Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-M, 2017 WL 10486988, at *4 (N.D. Tex. Nov. 2, 2017) (citations omitted).

### 1. *Consumer Report*

Defendants argue that Plaintiff fails to state an FCRA claim against them because they "did not obtain information, let alone consumer credit information, from a consumer reporting agency." (docs. 9 at 20-22; 10 at 25-27.)

The FCRA defines a "consumer report" as "any written, oral, or other communication of

19

any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit

standing, credit capacity, character, general reputation, personal characteristics, or mode of living

which is used or expected to be used or collected in whole or in part for the purpose of serving as

a factor in establishing the consumer's eligibility for" credit, insurance, employment, or other

purposes authorized by statute. 15 U.S.C. § 1681a(d)(1). A "consumer reporting agency" is:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis,
> regularly engages in whole or in part in the practice of assembling or evaluating
> consumer credit information or other information on consumers for the purpose of
> furnishing consumer reports to third parties, and which uses any means or facility
> of interstate commerce for the purpose of preparing or furnishing consumer reports.

*Id.* § 1681a(f). By definition, a consumer report must be provided by a consumer reporting agency.

*See id.* § 1681a(d).

Defendants contend that under DISD Policy, DISD was required to review and approve the

criminal history record of job applicants, and that Texas has a statutory framework that entitles

school districts to obtain criminal history record information from an electronic clearinghouse

maintained by the Texas Department of Public Safety (DPS), which is not a consumer reporting

agency under the FCRA. (docs. 9 at 19-21; 10 at 25-27 (citing Tex. Gov't Code §§ 411.082,

411.0845, 411.090, and 411.097).)

Plaintiff's complaint does not reference DPS or the electronic clearinghouse it maintains.

While the complaint references DISD Policy, the policy does not mention the statutory framework

by which a school district may obtain criminal history record information, and there are no

provisions expressly requiring DISD to only obtain arrest record information from DPS, or

restricting it from obtaining the information from any source other than DPS. (*See* doc. 3 at 20.)

Nor have Defendants cited any statute that requires school districts to only obtain arrest record

information from DPS or restricting them from obtaining the information from any source other than DPS. The only support for Defendants' contention that DPS provided Plaintiff's arrest record information is the argument in their motions. As noted, only the pleadings may be considered in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. Plaintiff's complaint alleges facts sufficient to show that information regarding her arrest record was provided by a consumer reporting agency as defined by the FCRA, that Defendants used that information for employment purposes, and that she was not hired because of her arrest record. (*See* doc. 3 at 3-4.) Accepting her well-pleaded facts as true and viewing them in a light most favorable to her as required at this stage of the proceedings, even if "actual proof" of those facts "is improbable," Plaintiff has sufficiently alleged the existence of a consumer report within the meaning of the FCRA to survive dismissal. *See* 15 U.S.C. § 1681a(d)(1). The motions to dismiss the FCRA claims on this basis should be denied.

### 2. *Section 1681c(a)*

Defendants argue that Plaintiff fails to state a claim against them for violating 15 U.S.C. § 1681c because they "are neither a consumer reporting agency nor did they make a consumer report." (docs. 9 at 22-23; 10 at 27-29.).

Section 1681c(a) prohibits consumer reporting agencies from reporting certain information, including "[c]ivil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period," or "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(2) and (5).

21

Here, Plaintiff alleges that Defendants "violate[d] the Seven Year Rule for use of Consumer Reporting Agency (CRA) records and information regarding [her] arrest record and how they impact hiring decisions" because her arrests were from 1992 and 1994. (*See* doc. 3 at 3.) Plaintiff does not allege that Defendants are consumer reporting agencies as defined in § 1681a(f) or that they made a consumer report, and she does not plead any facts giving rise to a reasonable inference that they should be held liable for violating 15 U.S.C. § 1681c(a)(2) and (5). Those claims against them should be dismissed.

### 3.  *Sections 1681b(b)(2), 1681b(b)(3), and 1681m(a)*

Defendants argue that Plaintiff fails to state a claim for violations of 15 U.S.C. §§ 1681b(b)(2), 1681b(b)(3), and 1681m(a). (*See* docs. 9 at 23-28; 10 at 29-32.)

Under § 1681b(b)(2), "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A).

Section 1681b(b)(3) states, in relevant part:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under [the FCRA]....

*Id.* § 1681b(b)(3)(A).

22

Section 1681m(a) provides that "[i]f any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report," the person shall notify the consumer that an adverse decision was made as a result of the report and must provide, among other things, the contact information of the consumer reporting agency and the right to dispute the accuracy or completeness of the report. *Id.* § 1681m(a). Under the FCRA, an "adverse action" includes "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." *Id.* § 1681a(k)(1)(B)(ii).

### a.  Claims Against DISD

DISD argues that the complaint "contains no well-pleaded facts showing [Plaintiff's] consumer report was at issue or was the basis for [DISD's] hiring decisions." (doc. 10 at 31-32.) It also argues that "[a]ssuming Dallas ISD failed to make certain required disclosures," the complaint does not allege facts that it "'procure[d] a consumer report, or cause[d] a consumer report to be procured' or 'intend[ed] to take such adverse action' against a consumer when 'using a consumer report for employment purposes'" (*Id.* at 31 (quoting 15 U.S.C. § 1681b(b)(2), (b)(3)).)

As explained above, Plaintiff has alleged facts that are sufficient to raise a reasonable inference that DISD obtained a consumer report and that she was denied employment based on information regarding her arrest record in that report. She alleges that her rights under the FCRA were violated because DISD did not provide her "the necessary disclosures and information regarding the Consumer Reporting Agencies where information regarding [her] background was obtained," and DISD made "an adverse employment decision regarding [her] without providing [her] the required opportunity for rebuttal, or explanation of the information." (doc. 3 at 3.) She

23

also alleges that she requested but was not provided "the name and contact information for the consumer reporting agency that was used to obtain any and all information regarding [her] background." (*Id.* at 5.) She also alleges that "DISD continues to access personal information regarding me and my credentials." (*Id.* at 6.)

Taken as true and drawing all the reasonable inferences in Plaintiff's favor, her allegations raise a reasonable inference that DISD obtained a consumer report containing information about her arrest record, and that it denied her employment based on information in that report. In addition, the allegations state a plausible claim that DISD procured a consumer report without providing her certain disclosures in violation of § 1681b(b)(2)(A); that it failed to provide her notice that it was considering an adverse decision, a copy of the report, and a description of her rights to dispute the accuracy of the information in the report in violation of § 1681b(b)(3)(A); and that it failed to provide her certain notices, disclosures, and information before taking an adverse employment action based on information in a consumer report in violation of § 1681m(a). The motion to dismiss the claims against DISD under §§ 1681b(b)(2), 1681b(b)(3), and 1681m(a) should be denied.

**b. Claims Against Employees**

Employees argue that Plaintiff fails to state a claim against them under the FCRA because the complaint contains no allegations that they "made the decision not to hire [her] or the decision to designate her ineligible for employment," that her consumer report was procured or caused to be procured by them, or that they intended to take an adverse action against her when using her consumer report. (doc. 9 at 23, 27.)

As discussed, an adverse action includes "a denial of employment *or any other decision*

*for employment purposes that adversely affects any current or prospective employee.*" 15 U.S.C. § 1681a(k)(1)(B)(ii) (emphasis added). The obligations under §§ 1681b(b)(2), 1681b(b)(3), and 1681m(a) apply to any "person" who takes an adverse action. A "person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* § 1681a(b).[8]

Here, Plaintiff alleges that Background Specialist "clearly denied [her] employment with DISD based solely on an arrest record via her email." (doc. 14 at 3.) She also alleges that Department Manager "upheld [Background Specialist's] decision to deny [her] employment based solely on an arrest record," and that EEO Manager "provided several pieces of inaccurate, irrelevant and untruthful information" when responding to the EEOC charge. (*Id.*) Nothing in the emails attached to her complaint, including the email informing her that she was "ineligible for employment with Dallas ISD," supports any inference that Background Specialist decided that Plaintiff was ineligible for hire or had any role in the decision to designate her ineligible for employment. (*See* doc. 3 at 17-20.) Plaintiff also fails to make any specific allegations regarding Department Manager's personal involvement in the employment process, other her conclusory claim that he "upheld [Background Specialist's] decision." (*See* doc. 14 at 3.) Plaintiff fails to allege any facts to raise a reasonable inference that EEO Manager made any decision regarding her employment with DISD, let alone an adverse decision based on a consumer report. *See* 15

---

[8] Neither the Fifth Circuit nor any other court of appeals appears to have specifically addressed whether individual employees of a user of a consumer report may be held liable under the FCRA. The only district court which appears to have addressed the issue found that the FCRA does provide for individual liability because the FCRA's definition of person includes individuals. *See Watson v. Caruso*, 424 F.Supp.3d 231, 250-51 (D. Conn. 2019) ("The FCRA indeed provides for individual liability."). Ultimately, however, it granted summary judgment in favor of the individual founder and chief executive officer of the corporate defendant because the complaint contained no allegations regarding how she personally played any role in the alleged FCRA violations. *Id.* at 251.

U.S.C. §§ 1681b(b)(3) and 1681m(a). She fails to explain how EEO Manager's response to her EEOC complaint was an adverse action based on a consumer report. While Plaintiff generally alleges that DISD obtained her consumer report and that it continues to access her personal information, she fails to plead any facts to support an inference that Employees procured, or caused to be procured, her consumer report, that they intended to (or did) take any adverse action against her based on it, or that they individually used her consumer report to take any employment action against her. See 15 U.S.C. §§ 1681b(b)(2), 1681b(b)(3); *see also Procure*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To obtain (something), esp. by special effort or means.").[9]

Viewing these allegations in the light most favorable to Plaintiff, they are insufficient to support a reasonable inference that Employees were personally involved in procuring her consumer report or in any decision for employment purposes that adversely affected her. *See Watson*, 424 F. Supp.3d at 251 (granting summary judgment on FCRA claims against individual defendant because "there [was] no evidence that she was personally involved in any alleged wrongdoing"). Without more, her conclusory allegations fail to "nudge[ ] [her] claim[s] across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Because Plaintiff has failed to allege sufficient facts to show that Employees violated §§ 1681b(b)(2), 1681b(b)(3), and 1681m(a), those FCRA claims against them should be dismissed.

## IV.      RECOMMENDATION

Defendants' motions to dismiss should be **GRANTED in part** and **DENIED in part**. All of Plaintiff's claims against Employees, and all her Title VII claims and FCRA claims under 15

---

[9] Employees contend that they do not possess hiring authority for DISD as a matter of Texas state law. (*See* doc. 9 at 25-26.)

U.S.C. § 1681c(a)(2) and (5) against DISD, should be **DISMISSED with prejudice** under Rule 12(b)(6). She should be given an extension of 30 days to effect proper service on DISD of her remaining FCRA claims against it under 15 U.S.C. §§ 1681b(b)(2), 1681b(b)(3), and 1681m(a).

 **SO RECOMMENDED** this 10th day of January, 2022.


_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

 A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE